UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                 Case No. 18-20364
v.                            Honorable Victoria A. Roberts

CLARENCE THOMAS WEAVER,

      Defendant.

_____/

## ORDER DENYING DEFENDANT CLARENCE WEAVER'S MOTION FOR RELEASE PENDING SENTENCING [ECF No. 129]

## I.    INTRODUCTION

Clarence Weaver's motion for release pending sentencing [ECF No. 129] is before the Court.

The motion for release is fully briefed, and the Court held a video hearing on the motion on May 14, 2020.  Weaver was present at the hearing and consented to proceed via videoconference.

The Court **DENIES** Weaver's Motion for Release [ECF No. 129].

## II.    BACKGROUND

In May 2018, Weaver and his co-defendants (collectively, "Defendants") travelled from Michigan to Georgia to deliver heroin to an individual named Quincy Moore.  For the heroin, Moore paid Defendants

partially in cash; for the remaining payment, he gave Defendants methamphetamine to take back to Michigan to sell.

Shortly after Defendants crossed into Michigan, law enforcement officers pulled them over for speeding.  The officers searched Defendants' car and found over 50 grams of methamphetamine, as well as two stolen firearms which were accessible to all occupants of the car.  The officers arrested Defendants.

The government charged Weaver in a criminal complaint with several drug and firearm offenses.  A grand jury later issued an indictment and a first superseding indictment.  The first superseding indictment charges Weaver with: (1) conspiracy to possess with intent to distribute methamphetamine; (2) distribution of methamphetamine and possession with intent to distribute methamphetamine; (3) felon in possession of firearms; and (4) conspiracy to distribute and possess with intent to distribute heroin.

Weaver made his initial appearance on May 15, 2018.

In anticipation of a detention hearing, Pretrial Services issued a report recommending that the Court deny bond and detain Weaver pending trial:

> The defendant poses a risk of nonappearance for the following reasons:

     1.    Offense Charged and/or Defendant's Conduct During Arrest for Instant Offense
     2.    Substance Abuse History
     3.    Criminal History

\* \* \*

The defendant poses a risk of danger for the following reasons:

     1.    Nature of Instant Offense
     2.    Violent Behavior History
     3.    Criminal History

\* \* \*

There is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community. Therefore, Pretrial Services respectfully recommends that the defendant be detained.

[Pretrial Services Report, at pp. 6-7 (May 15, 2018)].

The report also listed Weaver's criminal history and noted that Weaver said he is a diabetic and has high cholesterol.  Weaver has multiple felony convictions for drug distribution, including one in April 1999 for delivery or manufacture of 450-999 grams of cocaine, heroin or another narcotic; he was in prison for this offense until April 2009.  Weaver is 48 years old.

On May 16, 2018, Weaver waived his right to a detention hearing and consented to detention pending trial.

On September 11, 2018, Weaver pled guilty to Counts One and Two of the first superseding indictment – i.e., the two methamphetamine counts. The parties agree that Weaver faces a mandatory minimum sentence of 10 years, and that – due to his designation as a career offender – his guideline range is 262-327 months' imprisonment. The Court has yet to sentence Weaver.

On April 24, 2020, Weaver filed his motion for release pending sentencing.

## III.   ANALYSIS

The parties agree that because Weaver has been convicted of, and is awaiting sentencing for, an offense described in 18 U.S.C. § 3142(f)(1)(A)-(C) – i.e., an offense under the Controlled Substances Act that carries a term of imprisonment of at least 10 years – Section 3143(a)(2) applies. *See* 18 U.S.C. § 3143(a)(2); § 3142(f)(1)(B).

Under § 3143(a)(2), the Court must order Weaver detained pending sentencing unless: (1) the Court "finds there is a substantial likelihood that a motion for acquittal or new trial will be granted" or "an attorney for the Government has recommended that no sentence of imprisonment be imposed on [Weaver]"; and (2) the Court "finds by clear and convincing

4

evidence that [Weaver] is not likely to flee or pose a danger to any other person or the community."  *See* 18 U.S.C. § 3143(a)(2).

Weaver does not argue that he satisfies the exception to mandatory detention under § 1343.  Rather, he says the Court should release him under 18 U.S.C. § 1345(c).

Under § 1345(c), the Court may release a "person subject to detention pursuant to section 3143(a)(2)" – like Weaver – if: (1) the person shows that he or she "meets the conditions of release set forth in section 3143(a)(1)" – i.e., there is clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and (2) the person "clearly show[s] that there are exceptional reasons why [his or her] detention would not be appropriate." *See* 18 U.S.C. § 1345(c) ("A person subject to detention pursuant to section 3143(a)(2) . . ., and who meets the conditions of release set forth in section 3143(a)(1). . ., may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."); § 1343(a)(1) (requiring detention "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if

released"); Fed. R. Crim. P. 46(c) ("The provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.").

Weaver argues that he satisfies each of the requirements for release under § 1345, and he requests that the Court release him "on an at-home tether until sentencing."

### A. Flight Risk

First, Weaver says he is not a flight risk because: (1) his family, including his children, live locally; (2) he has been an active father, volunteering his time helping coach his son with wrestling; and (3) he has long term relationships with the mothers of his children and is otherwise bound to the local community.  If released, Weaver says he would live in Chesterfield Township with his fiancé and two of his children.

The government says Weaver cannot show that he is not a flight risk; it says Weaver has not even suggested that he is less of a flight risk than he was when he was initially arrested.

Based on his ties to the community and the fact that he has lived in the area his entire life, the Court finds that Weaver establishes by clear and convincing evidence that he is not a flight risk.

6

**B.     Danger to Community**

Weaver says he is not a danger to the community because: (1) "He is not a violent person and his prior criminal history essentially consists of prior narcotic cases"; (2) he was not accused of threatening or hurting anybody in this case, and he took responsibility for his actions almost immediately after being charged; (3) as his character letters attached to his Sentencing Memorandum reference, he has a very good side to him.

As the government summarizes (with citation to the presentence investigation report), Weaver's criminal history spans 27 years and includes: six previous illegal drug convictions, one of which was committed while on bond and another that was coupled with firearms possession; a felony assault conviction involving the discharge of a firearm; and an arrest while on parole. Despite these convictions and time spent in prison, the government says Weaver has not been deterred from a life of crime, and the Court should doubt that Weaver will not commit crimes if released on bond.

Here, Weaver conspired with three others to drive to Georgia to sell a large quantity of heroin, then transport over 50 grams of methamphetamine to be sold in the Detroit area. They also transported two stolen firearms. In addition to putting his co-conspirators in danger through this plot, Weaver

7

put the lives of those who Defendants sold to in danger, as well as the innocent community members living nearby.

These facts demonstrate that Weaver is a significant danger to the community. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence. . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." (collecting cases)).

Because Weaver fails to show that he is not a danger to the community, he is not entitled to release under § 3145(c). *See* 18 U.S.C. § 1345(c), 1343(a)(1).

### C. COVID-19 and Exceptional Circumstances

Weaver contends that the Coronavirus pandemic coupled with his health conditions constitute an exceptional reason for why his detention is not appropriate. Particularly, Weaver says he is at far greater risk to die from COVID-19 because he struggles with obesity and has diabetes and high cholesterol. The Centers for Disease Control and Prevention has stated that people with diabetes are at higher risk of severe illness from COVID-19. *See* Groups at Higher Risk for Severe Illness (May 14, 2020),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 14, 2020).  Weaver also states that he has heart issues.  Medical records do not support this. Weaver claims that it is only a matter of time before he contracts COVID-19 because the facility where he is being detained – Milan – is overrun with the virus.

The Court acknowledges that COVID-19 is a serious public health concern, and one that creates particularly concerning risks to prisoners due to the inherent nature of prisons.  The Court also acknowledges that, in certain circumstances, the threat of COVID-19 may constitute an exceptional reason warranting the release of a defendant on bond – especially where a person has preexisting health conditions that make him or her more susceptible to COVID-19.  However, it is unnecessary to consider that question here, because Weaver does not satisfy each of the other requirements of § 1345.

Particularly, Weaver fails to demonstrate by clear and convincing evidence that he would not pose a danger to the safety of any other person or the community if released.  *See* 18 U.S.C. § 1345(c); § 1343(a)(1).

Moreover, Weaver's representation that Milan is overrun with COVID-19 is misleading and not supported.  Milan is both a federal correctional

9

institution (i.e., FCI Milan) and a federal detention center (i.e., FDC Milan).

FCI Milan and FDC Milan are separate buildings.  While FCI Milan has

more cases of COVID-19, as of May 12, 2020, FDC Milan – where Weaver

is being detained – has only had four inmates test positive for COVID-19.

Two recovered weeks ago; the other two are in quarantine.

## IV.    CONCLUSION

The Court **DENIES** Weaver's motion for release pending sentencing

[ECF No. 129].

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 15, 2020